UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

ROGER DAVIS )
)
V. ) NO. 2:08-CV-327
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge pursuant to 28 U.S.C. § 636, and the standing orders of this Court, for a report and recommendation regarding the administrative denial of the plaintiff's application for disability insurance benefits under the Social Security Act . Both the plaintiff and the defendant Commissioner have filed Motions for Summary Judgment [Docs. 6 and 10].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349

(6th Cir. 1988).

Plaintiff was 43 years of age at the time of the administrative hearing before the Administrative Law Judge ["ALJ"]. He had past relevant work experience as a floor inspector, which was unskilled and light; and as a maintenance worker, which was unskilled and heavy. He completed high school. Plaintiff alleged a disability onset date of April 4, 1994. His insured status expired on December 31, 1999. He did not file his application for disability insurance benefits until January, 2007. His alleged impairments include neuralgia, high blood pressure, depression (nos), and anxiety (nos).

The most important factor to bear in mind in reviewing the ALJ's decision for substantial evidence is that the plaintiff must prove that he was disabled as of December 31, 1999, when his insured status expired. Although evidence of a claimant's condition subsequent to the lapse of insured status may be relevant to whether the claimant was disabled during the insured period, that date is the critical benchmark. Proof of an absolute, total, and permanent inability to engage in any substantial gainful activity subsequent to that date means nothing if there is substantial evidence that a claimant was not disabled as of that date.

Plaintiff's statement of his medical history is set forth in his brief as follows:

> Plaintiff was admitted to Indian Path Pavilion from May 3, 1989 through May 9, 1989, after he presented to Dr. Ronald Smith's office on an emergency basis with a history of increasing depression. Plaintiff had been unable to cope; he found the pressures of work unbearable; he found himself being irritable, avoiding people, and readily flying off the handle; he was becoming restless; his sleep pattern had become impaired; and he viewed himself as being bored with life. It was noted that during a brief time off from work, Plaintiff found himself feeling much better, but upon returning to work, his temper again flared. The final diagnoses upon discharge were adjustment disorder with mixed emotional features and dysthymia (Tr. 175-187).
> Plaintiff received treatment at West Main Medical Center from January 20, 2006

through August 20, 2007. Treatment was rendered for chronic low back pain with history of multi-level degenerative disc disease, chronic neurodermatitis, hypertension, poor sleep, clinical depression, neuropathy type pain, anxiety, fatigue, groin pain, skin lesion, left knee pain, right leg pain, dizziness, itching sensation, chronic pharyngitis, chronic sinusitis, and gastroesophageal reflux disease (GERD) (Tr. 188-208, 228-251, 275-278).

Plaintiff received psychiatric treatment by Dr. Ronald Smith from May 16, 2005 through May 22, 2007. The handwritten notes are largely illegible, but do reflect ongoing treatment for major recurrent depression, generalized anxiety disorder, itching spells secondary to anxiety, excessive worry, poor self-esteem, and declining memory (Tr. 209-225, 252-254).

Plaintiff was examined at Watauga Orthopaedics on March 27, 2007, for evaluation of a severe year history of low back pain with multiple flare-ups. The diagnoses were degenerative disc disease of the lumbar spine with back pain and lumbar spinal stenosis at multiple levels (Tr. 255-256).

On June 24, 2007, a reviewing state agency physician opined there was insufficient evidence to determine Plaintiff's physical limitations prior to December 31, 1999. Dr. Fields also noted there were no treatment notes prior to the date last insured to evaluate (Tr. 271-274).

On June 25, 2007, a reviewing state agency physician opined there was insufficient evidence to determine Plaintiff's mental limitations from April 4, 1994 through December 31, 1999. Specifically, Dr. Regan noted the record contained no treatment notes prior to the date last insured to evaluate (Tr. 257-270).

Plaintiff received treatment at Dermatology Associates from August 11, 1994 through June 26, 1995, due to sudden onsets of itching, burning on the arms to the point that he has to take a fork to scratch and relieve the itching, altered sensation, and parathesia (Tr. 282). Plaintiff returned on October 25, 2007, for treatment of neuralgia dating back 18-20 years, with sun exposure being the largest precipitating factor. It was noted this was more of a neuropathic type of itch, for which Plaintiff had failed most of the usual medications (Tr. 280-281).

Plaintiff continued treatment by Dr. Smith from June 20, 2007 through December 19, 2007, due to major recurrent depression, generalized anxiety disorder, possible attention deficit disorder, inability to concentrate, forgetfulness, and continued itching (Tr. 283-292). On November 24, 2007, Dr. Smith opined Plaintiff has no useful ability (poor/none) to deal with work stresses; maintain attention and concentration; and understand, remember, and carry out complex job instructions. Plaintiff's ability to function was noted to be seriously limited, but not precluded (fair) in the areas of use judgment with the public; interact with supervisors; understand, remember, and carry out detailed job instructions; behave in an emotionally stable manner; and relate predictably in social situations. To support his assessment, Dr. Smith noted Plaintiff has low stress tolerance, becoming increasingly distracted under even modest stress; he experiences puritis that becomes his central focus; he has had recurrent periods of depression and generalized anxiety which contributes to patterns of avoidance, distraction, irritability, and catastrophic thinking; a present consideration is adult attention deficit disorder; he is often seen as forgetful; flaring of depression further impairs his focus; and he has displayed a low tolerance to stress at which times emotional lability surfaces (Tr. 293-294).

3

>      Additional records were received from Dr. Smith, reflecting ongoing psychiatric treatment from August 29, 1996 through May 16, 2005. Again, the notes are largely illegible, but do show that, prior to his date last insured of December 1999, Plaintiff received regular ongoing treatment for excessive worry, itching related to anxiety, stress, sleep disturbance, anxiety, nervousness, low self-esteem, irritability, crying spells, and feelings of loneliness (Tr. 304-322). Plaintiff continued treatment after his date last insured, during which time he was suffering itching when stressed, anxiety, shortness of breath with anxiety, paranoia, depression, frustration, sleep disturbance, nervousness, panic, and decreased sense of worth (Tr. 323-365).
>      On May 13, 2008, Plaintiff's counsel resubmitted the November 27, 2007 assessment of Dr. Smith, along with a letter from Dr. Smith in which he opined the limitations listed on his assessment form existed on or before December 1999 (Tr. 301-303, 405-410). For unknown reasons, counsel's cover letter and the retrospective opinion of Dr. Smith were not originally included in the record and had to be resubmitted to the Appeals Council (Tr. 403-413). However, the electronic submission stamp at the top of the exhibit submitted to the ALJ clearly shows that counsel submitted six pages; however, for unknown reasons, only pages four through six were originally included in the record (see the top of Tr. 301-303, listing the submission on May 13, 2008 as consisting of page 4/6, page 5/6, and page 6/6, with no explanation as to what happened to page 1/6, page 2/6, and page 3/6 which the ALJ's office clearly received and should have included in the record and considered; see also Attachment 1, counsel's copy of the cover letter and exhibit submitted to the ALJ on May 13, 2008, along with the electronic filing barcode confirmation sheet which clearly shows that all six pages were received in the ALJ's office).

[Doc. 7, pgs. 2-5].

At the administrative hearing, the ALJ took the testimony of Cathy Sanders, a vocational expert ["VE"]. Ms. Sanders was asked to assume a person of plaintiff's age, education and past work experience. She was then asked to assume that the plaintiff had no exertional restrictions but could not perform jobs that exposed him to direct sunlight or excessive heat. She was then asked to assume that the plaintiff could only perform simple, unskilled jobs that would not require frequent interaction with the general public. When then asked if there were jobs he could perform, Ms. Sanders identified jobs as cleaners, sorters, inspectors and hand packagers. She stated that 6,500 such jobs in the region at the heavy level, 13,500 at the medium level, and 47,500 at the light level. In the entire United States,

4

there were a total of 4,750,000 such jobs. (Tr. 48-49).

In his hearing decision, the ALJ found, as of December 31, 1999, the plaintiff had the residual functional capacity to perform simple, unskilled jobs at all exertional levels that did not require exposure to direct sunlight or excessive heat and did not require working with the general public. (Tr. 16 and 17). Based upon Ms. Sanders' testimony as to the types and numbers of jobs the plaintiff could perform, the ALJ found that he was not disabled as of the date he was last insured. (Tr. 19).

Plaintiff has not contested the ALJ's finding regarding physical functional capacity. His argument is simply stated as follows: Dr. Smith has been a treating physician of plaintiff for his mental complaints since plaintiff's 1989 hospitalization. Dr. Smith submitted a mental assessment dated November 24, 2007, which indicated that the plaintiff suffered from substantial mental impairments (Tr. 408-09). In May, 2008, plaintiff's counsel sent Dr. Smith a letter with an enclosed copy of that mental assessment stating "[W]e would appreciate your opinion as to whether the limitations listed on the attached assessment form existed on or before December, 1999?" Dr. Smith checked a box marked "yes" and signed the letter. (Tr. 407). State Agency mental health experts, when asked to review the plaintiff's mental health records after he filed his application seven years after his insured status expired, stated they could render no opinion as to the severity of any mental impairment as of December 31, 1999. Therefore, plaintiff argues that Dr. Smith's opinion is absolutely controlling and that the ALJ erred in finding the mental residual functional capacity utilized in his question to the VE and in his hearing decision.

5

As a treating physician, there is no doubt that Dr. Smith's opinion regarding plaintiff's *present* limitations would be entitled to great weight, if the opinion was well supported by his clinical findings and if there were not well supported opinions to the contrary.[1] It is also true that Dr. Smith's opinion as to the plaintiff's limitations at some remote point in the treatment relationship would be entitled to great weight, if consistent with objective findings noted *at that remote point*.

Dr. Smith's relationship with plaintiff began with a hospital stay of six days at Indian Path Pavilion in May of 1989. Plaintiff was then employed at TRW. Dr. Smith noted that the plaintiff had been working 7 days a week, 8 and ½ hours per day, for the past 8 years. (Tr. 180). His diagnosis on admission was depressive disorder, NOS vs. an adjustment disorder with depressed mood. (Tr. 179). While at Indian Path, plaintiff was seen by Dr. Donald G. Hiers, Ph.D., a clinical psychologist. Dr. Hiers said that plaintiff's prognosis for effectiveness in psychotherapy was favorable. Plaintiff's "negative aspects" were his demanding workload, fear of his father dying, and dissatisfaction about not seeing his son more often. He felt plaintiff would "profit most" from a reduced workload, therapy, and relaxation and assertiveness strategies (Tr. 183). During a break from work, plaintiff felt much better, but his symptoms returned when he resumed his job. The diagnosis at discharge was adjustment disorder with mixed emotional features and dysthymia. He was placed on medication (Tr. 175-76).

Plaintiff's next visit to Dr. Smith was not until August, 1996, well after the asserted

---

[1] By waiting seven years after the expiration of his insured status to file his claim, and Dr. Smith rendering his opinion nine years after that critical event, the Commissioner was denied any opportunity to obtain a consultative examiner's opinion of plaintiff's condition in 1999.

disability onset date and after plaintiff had ceased working at TRW. Plaintiff complained that he stayed nervous, had no rest and had low self-esteem. When nervous, his arms itched. (Tr. 317). Plaintiff thereafter had regular visits with Dr. Smith, 17 in all prior to the expiration of his insured status on December 31, 1999. Prescribed medications were apparently helping the plaintiff to deal with his anxiety and problems with coping. (Tr. 310, 312, 313, 315, 320).

The last visit with Dr. Smith before the expiration of the plaintiff's insured status took place on October 27, 1999. Plaintiff told Dr. Smith that things were "going well." Plaintiff was playing in a volleyball league. Dr. Smith's note for that visit included a category entitled "Mental Status." His appearance was normal; his affect was appropriate[2]; his mood was normal, his perception was intact; his judgment was normal; his mood was euthymic; his thought content was unremarkable. In short, his mental status was normal two months before his insured status expired. (Tr. 321).

The next visit took place on February 8, 2000, after his insured status expired. The mental status portion of the treatment note was checked *identically* to the one on the last visit. Also plaintiff stated that he was having no problems with his medications and had enjoyed playing in a basketball tournament. (Tr. 323). The next visit in July, 2000, indicated that the plaintiff "plays volleyball." The mental status was unchanged except that the plaintiff was "anxious" rather than "euthymic." (Tr. 329). At the next visit, in October, 2000, plaintiff reported he was "playing basketball and volleyball." The mental status portion of the

---

[2]The other options under "affect" which were ***not*** checked were "blunted," "depressed," "inappropriate," and "tearful."

treatment note noted no abnormalities.

There is no need to recount here in detail the impressions and findings on subsequent visits to Dr. Smith in the years thereafter. Plaintiff did exhibit mild flare ups when encountering unusual stresses. Notably, he reported on numerous occasions that he was self-employed on a part time basis in various occupations and enjoyed traveling, including a cruise to Mexico (Tr. 361). Further, a mental status exam by Dr. Smith on January 11, 2006, six years after his insured status expired, was remarkable only for "mild" depression (Tr. 221).

There is nothing in Dr. Smith's notes and records in the period leading up to the expiration of plaintiff's insured status, or in the period of several years thereafter, which supports Dr. Smith's November 24, 2007, assessment. Dr. Smith's findings and impressions during the relevant period of time do not support the severe restrictions in that assessment. In fact, they totally contradict them. Plaintiff worked, although not full time, at very strenuous jobs such as moving stone, landscaping, and construction. He enjoyed playing team sports and traveling, which includes socializing and interaction. The Court finds that the ALJ was within his discretion as the finder of fact in giving little weight to Dr. Smith's unsupported assessment, and primary weight to Dr. Smith's reports from the relevant time period around December 31, 1999. Those reports constitute substantial evidence for his findings regarding plaintiff's residual functional capacity at the critical time. The Court need not address the plaintiff's contention that the ALJ lacked reports from other mental health professionals because Dr. Smith's own findings supported the ALJ. In any case, the Commissioner was deprived of any opportunity to obtain such reports by the plaintiff's

decision to wait 7 years after his insured status expired to file his application. A strong argument, not necessary for this review, could be made that such a failure to pursue benefits should not be rewarded by awarding them long past the point when the Commissioner could obtain any countervailing evidence.

Finally, the fact that the ALJ stated that he did not know that Dr. Smith's 2007 assessment was intended to show plaintiff's condition on and before December 31, 1999, is of no significance. The ALJ based his decision on the objective opinions of Dr. Smith made at the time of visits, not 8 years after the insured status expired. A remand would accomplish absolutely nothing.

There was substantial evidence to support the ALJ's findings and his ultimate determination that the plaintiff was not disabled. It is therefore respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 6] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 10] be GRANTED.[3]

                Respectfully recommended:

                s/ Dennis H. Inman
                United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).